SCOTT v. O. A. HANKINSON & CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—FIND-
ING OF INDUSTRIAL ACCIDENT BOARD—REVIEW.

In a proceeding under the workmen's compensation law
(2 Comp. Laws 1915, § 5465), the finding of the industrial
accident board is final if there is competent legal evidence
from which such fact might be found.

2. SAME—EVIDENCE—SUFFICIENCY.

The finding of the industrial accident board that plaintiff
was in the employ of defendant at the time of his injury,
*held*, supported by the evidence.

3. SAME—UNDISCLOSED PRINCIPAL—LIABILITY OF AGENT—ELECTION
OF SERVANT.

If defendant, in hiring plaintiff, intended to act as agent
of another, but failed to disclose such intention to plain-
tiff, upon learning the true state of facts plaintiff could
treat his contract as binding either defendant or the prin-
cipal, and, having elected to bind defendant, the latter
is liable under the workmen's compensation law.

Certiorari to Industrial Accident Board. Submitted
January 10, 1919. (Docket No. 25.) Decided April
3, 1919.

Frank W. Scott presented his claim for compensa-
tion against O. A. Hankinson, and others, copartners
as O. A. Hankinson & Company, for accidental injuries
received in defendant's employ. From an order award-
ing compensation, defendants and the Travelers' In-
surance Company, insurer, bring certiorari. Affirmed.

*Vandeveer & Foster*, for appellants.

*Lee N. Brown*, for appellee.

KUHN, J. Certiorari to the industrial accident
board. The sole question in this case is whether or

See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

not there was any evidence to support the finding of the industrial accident board that applicant was, at the time of the accident, in the employ of the respondent O. A. Hankinson & Company. The finding of the board is final (2 Comp. Laws 1915, § 5465) unless there was no competent legal evidence from which such fact might be found. See *Reck* v. *Whittlesberger*, 181 Mich. 463 (Ann. Cas. 1916C, 771); *Kennelly* v. *Stearns Salt & Lumber Co.*, 190 Mich. 628.

O. A. Hankinson & Company, a copartnership composed of Oliver A. Hankinson, Lee Hankinson and Robert Wiard, were the contractors for the installation of the plumbing, heating and ventilating systems in the new administration building of the Michigan State Normal College at Ypsilanti. They sublet the installation of the heating and ventilating systems to the Toledo Exhaust & Blow Pipe Company. The latter company entered upon the performance of its contract, but did not make satisfactory progress, owing to shortage of labor, difficulty in obtaining material, and lack of money, and the work finally came almost to a standstill. To enable them to proceed, O. A. Hankinson & Company guaranteed the payment of certain amounts due for material, agreed to advance money for the payment of labor, etc., and undertook to secure experienced laborers to complete the work. At the request of the Toledo company, they inserted the following advertisement in the Detroit papers, under the heading of "Male Help Wanted":

"Tinners and Lathers. Apply O. A. Hankinson & Co., Ypsilanti, Mich. 'Phone 312-F, 1."

Applicant was at the time working on the main building as a tinner in the employ of the Pudrith Roofing Company, of Detroit, who were the contractors for the roofing. He had previously made some inquiries with a view to securing employment

on this heating and ventilating job, and after the advertisement appeared, applied to Mr. O. A. Hankinson personally, and was employed, and as soon as they were ready for him, commenced work as a tinner on this heating and ventilating system.  Three days later, while he was at work, a laborer who was wheeling a piece of iron tie beam in a wheelbarrow for use by applicant in connection with his work, in some way allowed the load to tip over and the iron beam fell on Mr. Scott's left foot, crushing and cutting it severely.

It is the claim of O. A. Hankinson & Company that, in the employing of Mr. Scott, Mr. Hankinson was merely acting as agent for the Toledo Exhaust & Blow Pipe Company, who were still the contractors for this work, and that Mr. Scott thereupon became an employee of the latter company.  Mr. Scott, however, claims that no mention whatever was made of the Toledo Company in the contract of hiring, but, on the contrary, to use his words:

"Mr. Hankinson said he was very glad to get me to help on the ventilating work at the school; that I should consider myself engaged to O. A. Hankinson & Company."

And in another part of the record we find the following testimony:

"*Q.* I would like to know of Mr. Scott if he can give the date that he fixed the price with Mr. Hankinson as to the wage he received?

"*A.* Well, I can figure it out.  It was September 28th that I was hurt; that was on Friday, and it was the—the second Sunday after that.  Friday, Saturday, Sunday; the second Sunday evening.

"*Mr. Vandeveer:* That would be what, the 6th or 7th?

"*Mr. Brown:* The 7th.

"*Q.* Did you ever tell Mr. Scharer here, that has just been on the stand, or anyone else, that you were working for the Blow Pipe Company?

"*A*. I did not.

"*Q*. Did you know anything concerning the Blow Pipe Company?

"*A*. I did not. I never had any connection with them, or any knowledge of them at all. My entire arrangement was with Mr. Hankinson entirely.

"*Q*. Now, will you give the exact language that took place when the price was fixed as to what you were to receive an hour?

"*A*. Mr. Hankinson was solicitous about my condition, seemed to be. We were good friends, and he says, 'What hours were you putting in on that work out there; how many hours a day?' I told him nine hours. He says, 'I am paying 50 cents an hour; will that be satisfactory to you?' I told him it would. He says, 'I hope you won't be laid up very long.' He says, 'I need you up there to go on with this work.' And he says. 'Anything I can do for you I would be glad to do.' He says, 'Do you need any money?' I says, 'No, not just at present.'

"*Q*. Did you have any conversation with Mr. Wiard, who has just been on the stand, in which you told Mr. Wiard that you were going to work for the Blow Pipe Company?

"*A*. Yes, sir—no, not for the Blow Pipe Company. My connection with Mr. Wiard was while I was working on the main building. I had heard through workmen there that Mr. Hankinson had the contract for the ventilating work. I went over to see Mr. Wiard. He is a friend of mine, and I told him that I would like to get a job working for Mr. Hankinson on that ventilating work. I understood he had it, and, 'Well,' he says, 'I will see Mr. Hankinson and see if I can get you the job.' A short time after that he says, 'I have seen Mr. Hankinson, and Mr. Hankinson says he would like to have you; just the man he wanted, and to engage you.' He says, 'Consider yourself engaged.' So later I walked up to Mr. Hankinson and asked him if he had made arrangements with Mr. Wiard to hire me for work on the ventilating. He said that he had; he was glad to get me, and to go to work in a few days.

"*Q*. Did you ever have a conversation with him in which you wanted him to show you where the pipes,

and so forth, went, as he states, and in which you told him that you had hired out to the Blow Pipe Company?

"*A.* Not that way.

"*Q.* Did you ever tell him you had hired to the Blow Pipe Company?

"*A.* No, sir, I know nothing about that at all in any way. I never had anything to do with the Blow Pipe Company. All of my transactions were with Mr. Hankinson. I met· Mr. Hankinson down in the building, and I asked him again personally if he told Mr. Wiard to engage me. He said that he did, and I considered myself engaged to work for the O. A. Hankinson Company. * * * He says, 'We have got some iron coming and as soon as we get that fixed up, why, you can go to work.' "

Counsel for respondents say, in their brief:

"There is only one question before this court for determination, and that is, Does the record fairly and impartially disclose that the applicant Scott was an employee of the respondent Hankinson at the time he was injured and for which a claim for compensation was made and favorably acted upon by the industrial accident board? * * *

"Counsel is well aware of the fact that the Supreme Court will not disturb the findings of the industrial accident board, in the absence of fraud, where there is competent and legal evidence to support them; that such findings are conclusive. It is the respondent's contention, however, that in the case at bar the evidence does not support the finding of the industrial accident board that the claimant was an employee of the respondent."

If counsel mean to assert that there is no evidence whatever in the record upon which the board might have based the finding complained of, we cannot agree with their contention. The testimony above quoted is a sufficient answer to such a claim. And if counsel mean merely that there is not a preponderance of evidence to support the finding, respondents have no

standing in this court. The question is not open to review.

Counsel further say:

"This record on its face discloses that even though Scott was hired by Hankinson, it was done by authority of, and on behalf of the Toledo Exhaust & Blow Pipe Company and that the applicant was in the service of the Toledo Exhaust & Blow Pipe Company. That in effect is the substance of the evidence taken as a whole."

Even if it might be conceded that the real purpose of Hankinson & Company and the Toledo company was that Mr. Scott should be considered as in the employ of the latter—that he was to have been placed on its pay roll and under the direction of its foreman— it would not necessarily follow that the finding and award in this case was erroneous. If O. A. Hankinson & Company were acting as agents and in making the contract of hiring failed to disclose their principal, and Mr. Scott was led to enter into the contract under the belief that he was contracting with Hankinson & Company as principals, there can be no doubt, it seems to us, that Mr. Scott, upon learning the true state of facts, could treat his contract as binding either Hankinson & Company or the Toledo company, at his election. Having elected to hold O. A. Hankinson & Company, they must answer to him as principals, and a sufficient contract of hiring existed between them to enable Mr. Scott to enforce a claim under the workmen's compensation law against the said company.

The finding and order of the industrial accident board is therefore hereby affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. OSTRANDER, J., did not sit.