65 So.2d 723 (1953)
FLORIDA GAME & FRESH WATER FISH COMMISSION et al.
v.
DRIGGERS.
Supreme Court of Florida, Special Division B.
March 31, 1953.
Rehearing Denied April 30, 1953.
*724 Lazonby, Dell, Graham & Mills, Gainesville, for appellant Hartford Accident & Indemnity Co.
Wendell C. Heaton, Tallahassee, for appellant Florida Industrial Commission.
W.W. Stalvey and J. Lewis Hall, Tallahassee, for appellee.
DREW, Justice.
On June 6, 1949, E.E. Driggers, an employee of Florida Game & Fresh Water Fish Commission, lost his left eye (that is, the eye itself was removed and replaced by an artificial eye) as the result of an accident arising out of and in the course of his employment. At the time of the injury Driggers had no more than 10% use of said eye, having lost the remaining 90% in a childhood accident. Driggers was able to return to work September 1, 1949. These facts are not in dispute.
The Deputy Commissioner awarded full permanent disability compensation of 175 weeks for "eye lost" under Section 440.15(3)(e), F.S.A. and rejected the carrier's contentions (1) that "since the Act provides in Section 440.15(3)(p) that 80% loss of vision of the eye shall be considered as the same as the `loss of eye', for compensation purposes, that the intent of the Act is to compensate for loss of vision, rather than for loss of organ itself." and (2) "that claimant lost his eye as a result of a `subsequent accident'" within the intendment of the subsequent accident Section, viz.: 440.15(5)(c) of the Act. The full Commission reversed the Deputy Commissioner, holding that Driggers did not have an eye to lose within the intendment of the Act; that he had already suffered that loss as a result of the prior accident  and awarded him only 10% compensation. The Circuit Court reversed the full Commission and reinstated the award of the Deputy Commissioner. This appeal brings to us for review the last mentioned order of the Circuit Court.
Counsel for both parties agree that the precise questions raised in this appeal, and set forth hereafter, have never been decided by this Court. They both agree that the issues are presented by the following questions, the first of which received a positive answer and the second of which received a negative answer in the order appealed from, viz.:
First question: Where, as a result of an industrial accident, an employee loses an eye having no vision useful to the employee in his employment, has he suffered an "eye loss" within the intendment of the Workmen's Compensation provision providing for recovery of permanent partial disability compensation for the loss of an eye?
Second question: Where, as a result of a childhood accident, an employee has only 10 per cent vision remaining in an eye which is thereafter removed as a result of a second industrial accident which alone would not have been sufficient to cause removal of the eye but for the disability from the prior accident, does the second industrial accident constitute a "subsequent accident" within the intendment of Workmen's *725 Compensation Act for the purpose of computing partial disability compensation payable to the employee for the eye lost as a result of such accident?
One purpose of Workmen's Compensation Act, among other purposes, is to make available promptly medical attention, hospitalization and compensation commensurate with the injury sustained in the course of employment; to place on the industry served and not on society the burden of providing for injured or killed workmen and their families. Keene Roofing Co. v. Whitehead, Fla., 43 So.2d 464; Weathers v. Cauthen, 152 Fla. 420, 12 So.2d 294, and many other cases. Such Acts are mutually advantageous to both workmen and employers, and have a stabilizing influence on business and the general economy.
A principle which is inherent in such Acts  and one which has been universally adopted  is that they are construed liberally; when doubts exist, such doubts are always resolved in favor of the workingman. Di Giorgio Fruit Corp. v. Pittman, Fla., 49 So.2d 600, and the cases there cited.
With these principles in mind we turn to the first proposition, viz.: that the removal of an eye which has only 10% vision does not constitute "loss of an eye" for purposes of disability compensation. At the very threshold we find that there is a hopeless conflict of authorities on the subject. The carrier says that these many conflicting decisions "result in a complexity of rulings difficult to analyze, unless careful attention is given to the factual situations, the language of the courts, and the particular eye provisions being construed", while the employee contends that "the plain language of the Florida Statute, the principles inherent in the Statute and the logic of the decisions of this Court construing it indicate clearly that the judgment appealed from should be affirmed." He also alleges  as does the carrier with reference to his position  that his contention is supported by the overwhelming weight of authority. If the weight of authority is either way, we believe the employee's position is better supported. In 58 Am.Jur. 784, par. 290 we find the following statement: "According to most cases the right to compensation for the loss of an eye or of the vision thereof as the result of an injury is not affected by the fact that it was previously defective, although there is some authority to the contrary." (Emphasis supplied.)
The Act itself provides for the loss of an eye as follows:
"440.15(3)(e). Eye lost, one hundred and seventy-five weeks compensation."
As we construe this portion of the Act, it is talking about the loss of the organ itself.
Further along in the same Section we find the Act dealing with loss of vision. This Section is:
"440.15(3)(p). Per cent of vision: Compensation for loss of eighty percent or more of the vision of an eye shall be the same as for the loss of the eye." (Emphasis supplied.)
Very logical and plausible arguments can be made to support both the position taken by the carrier and the employee. In fact, very logical and plausible arguments have been made at the bar of this Court by both and the excellent briefs of both counsel are highly enlightening and persuasive. This very fact is a strong argument in favor of the employee, if we give effect to probably the best established principle of these laws to which we have heretofore alluded, viz.: liberal construction in favor of the injured employee.
Counsel for the employer, in referring to the many decisions on this subject, has this to say:
"After an analysis of this range of decisions it became apparent that generally the many decisions in this field fell into four categories, which, for convenience of discussion, and with the assumption of a little poetic license, I gave the following designations:
"Statutory Percentage Test: Includes those jurisdictions holding that the eye lost must have minimum statutory *726 vision, at the time of the accident complained of.
"Industrial Use Test: Include those jurisdictions holding that the eye lost must have had vision useful to the employee for employment, at the time of the accident complained of.
"Practical Use Test: Includes jurisdictions holding that the eye lost need only have had vision useful to the employee in his private life, at the time of the accident complained of  that is, as opposed to being blind if he lost his other eye.
"Blind Eye Test: Includes those jurisdictions holding that loss of the sightless organ is compensable."
We think his designations of the four categories of decisions are useful here and can be useful in the future in cases of this kind.
The Blind Eye Test is not in issue here  all parties conceding the employee's eye had some vision.
So much has already been written on this subject that it would be an imposition on the bench and bar to repeat here what has already been said so many times, in so many different ways by other courts. We conclude that the Practical Use Test finds greater support in our Act, in the rationale of our decisions on other phases of the Act and in logic and justice, than the others. Our view is summed up in the following excerpt from the opinion in the case of Chicago Bridge & Iron Co. v. Industrial Commission, 316 Ill. 622, 147 N.E. 375, 376:
"* * * It is conceded that defendant in error had at least 10 per cent. of vision when he received his last injury, which necessitated the removal of the eyeball  that is, he could see with his defective eye at a distance of 20 feet what a person with normal vision could see at a distance of 200 feet. For many purposes this amount of vision was as useful to plaintiff * * * as normal vision. It is impossible for any human agency to measure the value to an individual of the last 10 per cent. of vision remaining in his eyes. Whether the defect in vision is caused by disease or accident or is natural, the reduced amount of vision is all the vision the individual has, and when it is destroyed the use of his eye is destroyed. The Legislature has fixed an arbitrary amount to be paid as compensation in such cases, and that amount is due and payable whenever a functioning eye is lost, though the eye may be infirm." (Emphasis supplied.)
The following cases support this principle: Haas v. Globe Indemnity Co., 16 La. App. 180, 132 So. 246; Kraushar v. Cummins Construction Corp., 180 Md. 486, 25 A.2d 439, 443. In the latter case the several annotations in A.L.R. are referred to and there are many pertinent observations which we approve supporting the view we take of our Act. We quote, with approval, from that opinion:
"* * * It must be concluded, however, that the weight of authorities elsewhere sustain the awarding of full compensation in the instant case of one hundred weeks for the loss of an eye. 8 A.L.R. 1325; 73 A.L.R. 708; 99 A.L.R. 1502. In the case of Purchase v. Grand Rapids Refrigerator Co., 194 Mich. 103, 160 N.W. 391, 392, cited in the briefs of both the appellant and the appellee, the court said in awarding full compensation for the loss of an eye where the injured person had just enough vision to distinguish daylight from dark or tell an approaching object: `The Legislature has not attempted a definition, or made a declaration, applicable to the case at bar, except in terms of the loss of an eye. It has not specified a normal eye, although it may be concluded that the law refers to an eye which performs in some degree the functions of a normal eye. A mere sightless organ might perhaps be considered no eye at all. Claimant has lost an eye, although an infirm one. It was not wholly useless as an eye. On the contrary, the testimony is that he could with it distinguish light and see approaching objects.' This language seems appropriate *727 here. We must also bear in mind what was said by this Court in the case of Lisowsky v. White, 177 Md. 377, 382, 9 A.2d 599, 601: `If there is a conflict in the Workmen's Compensation Law with respect to these questions of construction it seems to us that this should be resolved in favor of the claimant, otherwise that part of the Statute which vouchsafes to him a certain sum of money resulting from a definite injury sustained by him, as shown by established facts, would be nullified, and a construction giving to him a lesser sum would stand in its place. We can scarcely think the Legislature intended this to be.' Article 101, Section 48 (1), supra, provides for a form of waiver. This was not entered into in the instant case. The removal of the right eye of appellant was a serious loss to him as the sight which remained in that eye, such as it was, constituted a precious possession. We therefore conclude that the claimant should receive for permanent partial disability compensation at the rate specified, eighteen dollars per week, for one hundred weeks for the loss of an eye." (Emphasis supplied.)
The carrier's contention that in many of these cases the Statute being construed contained no loss of vision Section is not persuasive because, as we have said, our Act covers both loss of vision and loss of eye. To us, these are two separate and distinct injuries. Further, it is the reasoning in these opinions that is appealing to us and again there are states having the "loss of vision Sections" that have adopted the Practical Use Test in cases of this kind.
As to the carrier's contention presented by the second question, we agree with the argument of the employee that "the fundamental fallacy in the reasoning of the carrier and the authorities relied on by it is that it is based upon the premise that each ten percent of vision of an eye is of equal value." In this case the employee had about ten percent vision. To lose that ten percent meant that if he should suffer the misfortune to lose the sight of his other eye he would be irrevocably committed to a life of eternal darkness, dependent upon others to lead him wherever he went. Never again would he be able to enjoy the magnificence of an Autumn sunset nor the glory of a sunrise. His loved ones would become voices, there would be no night and day  only night. Of all the injuries a man may suffer, blindness is probably the one most dreaded. To argue that this last 10% of vision is of no more value than the first 10% is to ignore actualities.
In Hessley v. Minneapolis Steel Construction Co., 156 Minn. 405, 195 N.W. 274, 275, claimant's eye was removed as the result of an accident. Payment was resisted because by virtue of a prior accident (when he was not an employee and for which he received no compensation) he could not read with the eye. The Minnesota Court said:
"We do not stop to consider the relative injury provisions of the act; they are inapplicable to the facts here presented. What the rights of the parties would be in the case of a total loss of the use of a member, arm, leg, or eye, and payment therefor under paragraph C of section 14, chapter 82, Laws 1921, followed by a second injury to the same member, resulting in the total loss thereof, by severance from the body, we leave for determination when the precise case arises. Although in the case at bar plaintiff received an injury to the particular eye, materially impairing its usefulness, the Workmen's Compensation Act was not then in force, and he received no compensation for that injury."
See also Chicago Bridge & Iron Co. v. Industrial Commission, supra.
The order of the Circuit Court is affirmed.
Affirmed.
TERRELL, Acting C.J., and THOMAS and HOBSON, JJ., concur.