74 So.2d 282 (1954)
NARANJA ROCK CO., Inc. et al.
v.
DAWAL FARMS, Inc. et al.
Supreme Court of Florida, Special Division B.
July 6, 1954.
Rehearing Denied September 13, 1954.
*284 Wicker, Brown & Smith, James A. Smith, Miami, for petitioners.
Blackwell, Walker & Gray, Allen Clements, Miami, Rodney Durrance, Tallahassee, for respondents.
DREW, Justice.
On the evening of July 12, 1952 claimant's auto crashed into a tree and for the injuries sustained he sought benefits under the Workmen's Compensation Act, F.S.A. § 440.01 et seq., against the Naranja Rock Company, herein called Naranja, and Dawal Farms, Inc., herein called Dawal Farms.
Both corporations are organized under the Florida law and operate primarily in Dade County. Dawal Farms maintained a 2,000 acre tract of land and was engaged in farming and agriculture. Naranja maintained a 525 acre tract and was engaged in the manufacture of building blocks, selling of paint, building materials, and rock aggregate.
These two corporations were closely related in business. They maintained jointly a "mobile pool" of heavy equipment the title to which was in Naranja but which was used by both companies. This equipment pool was under the exclusive charge of one Randy Caves, who was in the employ of both companies as heavy equipment foreman for each and who for his work received weekly $20 from Dawal Farms and $85 from Naranja. Caves had control of this equipment as he saw fit to assign operations for doing the work of either company at any time. He also had full authority over the operators thereof including the power to hire and discharge such employees on behalf of either company.
In June, 1952, claimant Atwell applied for a job as a bulldozer operator at Naranja's main office, filling out an application on a Naranja form and talking with Caves. Caves employed Atwell, who was put to work as a bulldozer operator. The claimant ordinarily worked until midnight for wages at the rate of $1.75 per hour. Claimant received payment from Caves by cash in an envelope labeled Dawal Farms. Dawal Farms carried claimant on its payroll but billed Naranja for any services performed for it by claimant.
For the first ten days of his employment claimant, under Caves' direction, worked on projects of Naranja and Dawal Farms. On the afternoon of July 12, 1952, between 5:30 and 6:00 p.m. claimant, with another employee by the name of Hester, reported to work at a Dawal Farms project where both had worked the previous day. Not finding their equipment at this location, both employees drove to the Naranja premises where machines were available for work on the land of that company. Caves appeared and outlined their work for that day which work was a Naranja project on its premises, and instructed the two employees to cease work at midnight. Caves left the job and no persons other than the two employees remained in the vicinity of the work.
On this job claimant and Hester each operated a bulldozer breaking rock on the land. While so engaged, rainfall caused these two men to cease operations on three occasions. On the third occasion, about 9:00 p.m., they sat in Hester's car for a few minutes and then both decided to drive to a barbecue stand for coffee and shelter. Both workers intended to return to the job if the rain ceased within a reasonable time. No person was available from whom permission for such activity could have been obtained; but the claimant testified that, in the past while located on another job, he had been allowed by Caves to go some hundred yards for a cup of coffee.
Each worker decided to drive his own car. Hester drove the claimant to his car. Claimant entered his car and, in the words *285 of the Deputy Commissioner, "as he was leaving the Naranja Rock Company to the so-called dedicated road he ran into a tree which was on the right hand side," resulting in his injuries which are the basis of this action. This accident took place during a blinding rain on an unimproved road which ran parallel to and adjoining the 525 acre premises of Naranja, and which claimant had not traversed prior to the day of the accident. This road, known as Walden Drive, was used primarily for access to the Naranja premises and came to a dead end shortly beyond the premises. The title to the road had been in Naranja, but a few months before the accident the roadway was dedicated by the company to the county for public use. This road was a normal route for entry to Naranja grounds. The tree was in the right of way on the south side of the road at a point where Walden Drive intersected the driveway that entered the Naranja premises. This road was an usual means of ingress and egress but another exit was available at the opposite end of the premises.
Each company contended that the claimant was in the employ of the other at the time of the injury and contended further that the accident did not arise out of and in the course of claimant's employment.
The Deputy Commissioner ruled that the claimant was injured by an accident, which arose out of and in the course of his employment, and that, at the time of the injury, the claimant was in the employ and doing the work of both companies, and entered an order requiring each employer to pay one-half of the amount of compensation award to the claimant. On review, the Full Commission entered an order dismissing the claim against Dawal Farms and requiring Naranja to pay the full amount of the compensation award.
Naranja seeks certiorari in this Court contending that upon the record the claimant's injury did not arise out of and in the course of the employment and, further, that it was not an employer of claimant but that, if it were, its responsibility should be shared equally by Dawal Farms.
The Full Commission, in reviewing the order of the Deputy Commissioner, was required to adhere to his findings of fact unless there was no competent, substantial evidence to sustain them. It was the duty of the Full Commission to determine whether the findings of the Deputy were supported by the record and, if so, to determine whether his order was correct under the law. It is the duty of this Court to determine whether the Full Commission observed the substantial evidence rule in entering its order and to determine whether that order is forbidden by law. See Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659; U.S. Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741.
As to the proposition of whether the accident arose out of and in the course of the employment of claimant, the Deputy Commissioner found that claimant left his job at a time when he could not work because of the rain; that his departure was to relieve extreme discomfiture and was not simply for "his own convenience and satisfaction" because such relief would enable him to work more efficiently for his employer; that had someone in authority been available, claimant would have received permission to leave; and that claimant intended to return when the weather permitted. The Deputy Commissioner concluded that under these circumstances it would be unreasonable to hold that "the leaving by Atwell from the premises under the conditions which then existed took him out of the sphere of his employment" and further that the injury occurred at a place which was "within a reasonable sphere geographically to where he actually was performing his work."
This ruling was affirmed by the Full Commission on the ground that the offpremise point at which the accident occurred was on a normal route of entry to the Naranja plant and the hazards of that route became the hazards of the employment. We cannot say that this ruling is not supported by the evidence or is contrary to law.
*286 Where there is a special hazard on a normal route used by an employee as a means of entry to and exit from his place of work, the hazards of that route under appropriate circumstances become the hazards of the employment. Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Bountiful Brick Company v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402; Attaway v. Fidelity & Casualty Co. of New York, La. App. 1949, 39 So.2d 632.
In the Parramore case, a company workman was struck and killed by a train while riding to work in the car of another along a public road which led from a main highway across railroad tracks and into the plant and which was the only practicable way of ingress and egress for employees. The United States Supreme Court held that the claim was compensable under the Utah Workmen's Compensation Act providing for recovery for injuries arising out of or in the course of employment, against the contention that the Statute, as applied, deprived the employer of his property in violation of the Fourteenth Amendment.
In the Giles case, a compensation award, arising under the same Utah Statute involved in the Parramore case, was upheld for an accident in which the claimant was killed by a train while on his way to work along a path on private property. The employer knew of the common practice to use this route to work which enabled employees to avoid a more circuitous and inconvenient method of approach.
In the Attaway case, a workman, while enroute to his employer's premises, was struck and killed by a train at a railroad crossing intersecting a street to the plant within 100 feet of the entrance to his employer's premises. The Court held that under the time, place and circumstances the accident reasonably could be held compensable within the provisions of the Workmen's Compensation Act as arising out of and in the course of employment.
Naranja contends that neither the Parramore nor the Giles case is applicable because the Florida compensation act requires that an injury must arise out of and in the course of employment, and, further, because the claimant was not leaving the premises by the only route available. We do not think that the holdings of these two cases should be so narrowly construed. In the Attaway case, the pertinent portion of the compensation act there involved was worded similarly to that of Florida and the injured workman was using a route to work which was the customary line of travel although not the only means. There recovery was upheld on the authority of the two cited Federal Supreme Court cases.
In adopting the rule set forth, we recognize there are conflicting views with reference thereto. Some jurisdictions refuse to recognize it at all. See Simpson v. Lee and Cady, 294 Mich. 460, 293 N.W. 718. Other jurisdictions, recognizing the rule, confine its application to injuries occurring on private premises, see State ex rel. Gallet v. Clearwater Timber Company, 47 Idaho 295, 274 P. 802, 66 A.L.R. 1396, or limit it to situation where the off-premises injury occurred on a route which was the sole means of ingress and egress or where the roadway was constructed by the employer. See Kent v. Virginia-Carolina Chemical Co., 143 Va. 62, 129 S.E. 330.
We recognize further that in this situation as in many others under compensation acts, no precise formula can be effected which will automatically solve every case. See Bountiful Brick Co. v. Giles, supra. But a principle inherent in our Workmen's Compensation Act is that it should be liberally construed; and "when doubts exist, such doubts are always resolved in favor of the workingman." Florida Game & Fresh Water Fish Comm. v. Driggers, Fla. 1953, 65 So.2d 723, 725. And we think that it is within the reasonable intendment of our Act to hold that the accident in this case arose out of and in the course of claimant's employment where, under the circumstances here presented, the claimant during an enforced lull in his work, with implied permission *287 to leave his employer's premises, was injured by reason of a particular hazard existing in the roadway immediately adjacent to the premises of his employer.
In connection with the foregoing, the Deputy Commissioner found that claimant was leaving the premises to seek shelter and with the intention of returning if weather permitted. The Full Commission, in its order, set out that because of weather conditions, it was no longer possible for claimant to work and he was leaving the premises with the intention to go home. There was substantial competent evidence in the record to support the finding of the Deputy Commissioner; and, therefore, the Full Commission was bound thereby. However, we do feel that this disparity in findings of fact is not controlling because we see no difference in the application of the stated rule whether a claimant is going to and from work or going to and from an enforced rest period.
In support of its contention that the injury did not arise out of and in the course of employment, Naranja cited cases such as Sweat v. Allen, 145 Fla. 733, 200 So. 348; Heller Bros. Packing Co. v. Lewis, 155 Fla. 430, 20 So.2d 385; Heller Bros. Packing Co. v. Kendricks, 155 Fla. 428, 20 So.2d 387; Travelers Insurance Co. v. Taylor, 147 Fla. 210, 3 So.2d 381; Bituminous Casualty Co. v. Richardson, 148 Fla. 323, 4 So.2d 378; Fidelity & Casualty Company of N.Y. v. Moore, 143 Fla. 103, 196 So. 495. None of these cases is applicable here because none involved an injury to a claimant occurring by reason of a special hazard on a route used as means of ingress and egress to the employer's premises.
We now turn to the question of the liability for the compensation award. The Deputy Commissioner found that the claimant was in the employ of both Naranja and Dawal Farms and that, because these corporations were closely related, the claimant was simultaneously doing work for both, under the control of both, and therefore each should pay one-half the award. The Full Commission held that Naranja alone was responsible for the entire award. The Full Commission reached its conclusion on the theory that claimant was in the general employ of Dawal Farms but that he impliedly consented to work for Naranja on the night in question and was doing work for its benefit.
The evidence in the record supports the finding of the Deputy Commissioner that claimant's employment was joint or dual in the sense that claimant had an employment contract with both companies. The claimant was actually hired by Caves, who had full authority to employ workers for both companies; claimant did work for one company or the other as his services were needed and as he was directed, with each company contributing its proportionate share of salary according to the work done for each. The record does not show that claimant was ever told he was working specifically for one of the companies to the exclusion of the other. The claimant stated that he looked to Caves for his pay and his job.
Thus the evidence in the record supports a finding that both Naranja and Dawal Farms were principals of Caves who employed claimant on behalf of both to work for each as needed. If claimant at the time of hiring did not know of the agency or the existence of these principals, he nevertheless could, upon learning of the true circumstances, elect to hold them under the workmen's compensation laws. See Scott v. O.A. Hankinson & Co., 205 Mich. 353, 171 N.W. 489, 491, where the Court stated that if the agents at the time of hiring failed to disclose their principal, the claimant, "upon learning the true state of facts, could treat his contract as binding either Hankinson & Co. [as agents], or the Toledo Company [as principal], at his election."
The Deputy Commissioner reached an erroneous legal conclusion in holding that on the night of the accident the claimant was simultaneously doing work *288 for both employers under the control of both because "the existing relationship between the corporations being so close that for the purpose of determining for whom this man worked at the time he was injured they were acting as one and the same." The record does show that the same person was President of each company and that both companies were closely interwoven in their business activities and financial set-up. Nevertheless, the companies were distinct legal entities and must be treated as separate employers. See Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188. Therefore, we do not think the fact that the corporations were closely related is of itself sufficient to support the conclusion that on the night in question the claimant was doing the work of both employers.
Where a claimant is at the same time employed by two companies, the particular industry being served at the time of injury should be solely responsible for the workmen's compensation cost where that identification can be clearly made. Murphy Supply Company v. Fredrickson, 206 Wis. 210, 239 N.W. 420. See Florida Game & Fresh Water Fish Comm. v. Driggers, supra, 65 So.2d at page 725 where we said it is the purpose of the Act "to place on the industry served and not on society the burden of providing for injured or killed workmen and their families."
The Fredrickson case involved a dispute between two employers over their responsibilities under the workmen's compensation act. The Murphy Company had agreed that the Morley Company should hire a watchman to perform services for both companies, whose buildings were about one-half block apart. The Morley Company hired a watchman, who alternately inspected the places of business of each company during the night. The Morley Company paid his wages but the Murphy Company contributed a specified sum each month toward the wages. A watchman so employed, on the first night that he visited the premises of the Murphy Company, fell on its premises resulting in compensable injuries.
After the Commission ordered the Murphy Company to pay the full amount of the award, that company appealed, contending first that it was not an employer of the claimant because the Morley Company had agreed to furnish watchman service, and second that if it were an employer, it was liable jointly with the Morley Company for the award.
In rejecting the first contention, the Court pointed out that Morely Company was in no sense in the business of furnishing watchmen to other industries and made no profit out of the arrangement. And therefore the Court found that there was dual employment in that both companies agreed to employ a watchman to perform services for both.
In considering the matter of joint liability, the Court declined to follow authorities supporting appellant's contention. Instead the Court pointed out that
"the clear intent and purpose of the act is to burden the particular industry in which the injury to an employee occurs, with the damages resulting from such injury."
And the Court stated that this rule was just and fair and controlled the case before it because
"the particular work being performed by applicant at the time of his injury was that of the appellant and was not in any sense the work of the Morley Company."
Therefore, the Court held that the appellant, Murphy Company, should be solely responsible for the compensation award.
We think that the rule of the Fredrickson case controls the case at bar. On the night of the accident, the claimant was working on the premises of Naranja, engaged in doing work for the benefit of that company by operation of its bulldozer, under direction of its foreman. Under *289 these circumstances, it is clear that Naranja was the one being served; and therefore that Company is solely responsible for the compensation award.
The order of the Full Commission is correct and certiorari is therefore denied.
ROBERTS, C.J., and HOBSON and MATHEWS, JJ., concur.