Dr. Elton J. Gissendanner Executive Director Department of Natural Resources 3900 Commonwealth Boulevard Tallahassee, Florida 32303
Dear Dr. Gissendanner:
This is in response to your request for an opinion on substantially the following questions:
 (1) ARE MARINE PATROL OFFICERS IN THE FLORIDA DEPARTMENT OF NATURAL RESOURCES ELIGIBLE FOR THE FOLLOWING STATE PROVIDED BENEFITS WHILE EMPLOYED IN APPROVED OFF-DUTY PART-TIME JOBS WITH OTHER EMPLOYERS:
 (A) WORKERS' COMPENSATION AND DISABILITY BENEFITS AS PROVIDED BY Ch. 440, F.S.? IF NOT, ARE SAID OFFICERS ELIGIBLE FOR BENEFITS UNDER THEIR STATE GROUP HEALTH INSURANCE PLAN?
 (B) LAW ENFORCEMENT OFFICERS' DEATH BENEFITS AS PROVIDED BY s 112.19, F.S.?
 (C) PAYMENT OF COSTS AND ATTORNEY'S FEES IN DEFENDING CIVIL OR CRIMINAL ACTIONS AGAINST LAW ENFORCEMENT OFFICERS UNDER s 111.065, F.S.?
(D) DEFENSE OF CIVIL ACTIONS UNDER s 111.07, F.S.?
(E) ANY OTHER BENEFITS AVAILABLE TO LAW ENFORCEMENT OFFICERS?
(F) GENERAL LIABILITY AND AUTOMOBILE LIABILITY INSURANCE?
This opinion is premised upon the assumption that the marine patrol officers of the Florida Department of Natural Resources employed in approved off-duty part-time jobs with other employers are not during the course of such outside employments actively engaged in the performance of their official duties and functions for the State of Florida or the Florida Department of Natural Resources. In essence, while engaged in such off-duty outside employments, said officers are not employees or officers of the state. Since each of your questions, and even the above assumption, involve and may turn upon the application of various legal principles to particular factual circumstances present in any given situation, thus requiring for resolution mixed questions of law and fact which this office is not empowered to determine, this opinion is necessarily confined to a discussion of general principles of law and should not be construed as applicable to or determinative of any particular circumstance or employment.
Question One (A)
Section 440.02(1)(b), F.S., defines the term `employment' to include `employment by the state,' and s 440.02(4) defines the term `employer' to mean, among other things, `the state.' Section440.03, F.S., provides that every employer and employee as defined in s 440.02 shall be bound by the provisions of Ch. 440, F.S. Thus, it is clear that the workers' compensation coverage applicable to marine patrol officers in the Florida Department of Natural Resources must be in conformance with the Workers' Compensation Law, Chapter 440, F.S. Inasmuch as state agencies are expressly made subject to the Workers' Compensation Act, it logically follows that such agencies are subject to the same rules that would apply to private employers. Hodges v. State Road Department, 171 So.2d 523 (Fla. 1965).
Section 440.09(1), F.S., provides, in pertinent part, that worker's compensation shall be payable in respect of disability or death of an employee `if the disability or death results from an injury arising out of and in the course of employment.' The basis of the whole statutory scheme of the Workers' Compensation Law is the relationship of employer-employee at the time the employee sustains an injury. An injured employee is entitled to compensation under the statute only if he or she was an employee of the employer at the time of the injury. An employee of the state who bears a working relation to two or more employers is eligible for compensation benefits payable by the state when and only when his or her disability or death results from an injury which occurred or actually arose out of and in the course of said injured employee's employment with the state. In other words, it is only when a state employee is injured while engaged in the performance of his or her official duties and functions for and with the state and pursuant to an appointment by or contract of hire with the state that any resulting disability or death is compensable under the statute. The statute does not extend its benefits for state employees to other employments with other employers or impose any liability on the state for the disability or death of state employees arising out of and in the course of employment other than with the state.
Where a workers' compensation claimant is at the same time employed by two employers, the particular employer being served at the time of injury is solely responsible for the workers' compensation benefits. Naranja Rock Co., Inc. v. Dawal Farms, Inc., 74 So.2d 282 (Fla. 1954); Stuyvesant Corp. v. Waterhouse,74 So.2d 554 (Fla. 1954). The courts of this state have applied certain tests to establish the employer-employee relationship and employer responsibility to furnish benefits under the Workers' Compensation Law in cases where an employee bears a working relationship to two or more employers. It has been stated that although `control' is an important factor to be considered in determining the existence of the employer-employee relationship, it is not the only factor to consider. The other main factors in considering the existence of an employer-employee relationship for purposes of liability under the Workers' Compensation Law are (1) whether or not a contract for hire, express or implied, exists between the employee and the alleged special employer, (2) whether or not the work being done at the time of the injury was essentially that of the alleged special employer, and (3) whether or not the power to control the details of work being done at the time of the accident resided in the alleged special employer. Hamilton v. Shell Oil Company, 233 So.2d 179 (4 D.C.A. Fla., 1970); Stuyvesant Corp. v. Waterhouse, 74 So.2d 554 (Fla. 1954); Rainbow Poultry Company v. Ritter Rental System, Inc.,140 So.2d 101 (Fla. 1962).
Although the determination of the existence of an employer-employee relationship with the state and any state liability for workers' compensation benefits arising from such a relationship at the time of an injury is a mixed question of fact and law which must ultimately be decided by the courts, I am inclined to the view that no such employer-employee relationship or liability exists between a marine patrol officer and the state when said officer, during off-duty hours, works for another employer and is not actually engaged in his employment with the state. See Atkins v. State, Department of Highway Safety and Motor Vehicles, 383 So.2d 313 (1 D.C.A. Fla., 1980), wherein it was held that a highway patrolman's back injury, which occurred while he was at a two-week national guard summer camp, had no connection with his employment as a highway patrolman, did not arise out of or in the course of his employment as a highway patrolman and thus his workers' compensation claim against the Florida Highway Patrol was properly dismissed.
Based on information contained in the materials furnished this office in connection with your request for my opinion, I understand that the Division of Risk Management of the Department of Insurance, which is charged with the administration, management, and maintenance of the Florida Casualty Insurance Risk Management Trust Fund, is of the same opinion regarding the workers' compensation coverage provided by the state.
You further inquire in your first question whether a marine patrol officer of the Florida Department of Natural Resources would be entitled to benefits under the state's group health insurance plan for an injury sustained in off-duty employment with another employer. Subject to any limitations, exceptions, or qualifications of the insurance plan established pursuant to s110.123, F.S., it is my opinion that the officer, if eligible and participating in the plan, would be entitled to the benefits provided under such a general health insurance plan even if the necessity to utilize the health insurance arose out of secondary outside employment with other employers. Very simply, under a general health insurance plan, there is no requirement that a sickness, an injury, etc., arise out of or in the scope of employment in order to be compensable. It is, however, the responsibility of the Department of Administration to administer the state group insurance program including, subject to legislative approval, the determination of benefits to be provided and the contributions to be required for the program. See s110.123(5)(a), F.S. It is, therefore, the Department of Administration that should be contacted regarding the specifics on the extent of coverage and any exceptions or exclusions to coverage under the plan. It is my understanding that the Department of Administration has generally confirmed that the employees' state group health insurance benefits would be available to the employees even if engaged in the off-duty outside employment at issue.
Question One (B)
Section 112.19, F.S., provides in pertinent part, as follows:
(1) Whenever used in this act:
 (a) The word `employer' means a state board, commission, department, division, bureau or agency, or a county or municipality.
 (b) The term `criminal law' means penal statutes or penal ordinances.
 (c) The term `law enforcement officer' means a full-time officer, deputy, agent or employee of an employer, whether elected at the polls, appointed or employed, whose duties require him to enforce criminal laws, make investigations relating thereto, apprehend and arrest violators thereof or transport, handle or guard persons arrested for, charged with or convicted of violations thereof.
 (2)(a) The sum of $20,000 shall be paid as hereinafter provided when a law enforcement officer, while under 70 years of age and while engaged in the performance of any of the duties mentioned in paragraph (1)(c), is killed or receives bodily injury which results in the loss of his life within 180 days after being received, regardless of whether he is killed or such bodily injury is inflicted upon him intentionally or accidentally, provided that such killing is not the result of suicide and that such bodily injury is not intentionally self-inflicted. Such payment shall be in addition to any workers' compensation or pension benefits and shall be exempt from the claims and demands of creditors of such law enforcement officer. (e.s.)
See also s 370.021(5), F.S., which provides that marine patrol officers of the Department of Natural Resources `are constituted law enforcement officers of this state with full power to investigate and arrest for any violations of the laws of this state' and that the `general laws applicable to arrests by peace officers of this state shall also be applicable to such law enforcement officers.'
The above quoted statutes do not in terms explicitly require that the death, or the injury which results in the loss of life, of a law enforcement officer must occur while the officer is actively engaged for the Department of Natural Resources or during the course of his or her employment with that Department in the performance of any of the duties enumerated in s 112.19(1)(c), F.S. In the absence of any legislative or judicial direction on the question, I am unable to say that the above statutory provisions and the benefits provided thereby would not apply in the event that an off-duty law enforcement officer should be killed trying to stop the commission of a crime, such as a robbery, or otherwise attempting to enforce the criminal or penal statutes or apprehend and arrest violators thereof, even if at the time of any such incident the law enforcement officer was working for an employer other than the Department of Natural Resources performing approved part-time off-duty security work for the other employer. I am, therefore, compelled to conclude, pending legislative clarification or judicial determination, that the question whether a marine patrol officer of the Department of Natural Resources killed while engaged in approved part-time, off-duty work for another employer would be entitled to the death benefits provided for in s 112.19(2)(a), F.S., is a mixed legal and factual question which I am not empowered to decide and which must, more appropriately, be resolved on a case-by-case basis by the courts in appropriate legal proceedings and upon proper judicial findings of fact. Any enunciation from this office of a general principle applicable to the variety of factual situations which could come to call on s 112.19 for benefits would be inappropriate and beyond this office's lawful authority.
Question One (C)
Section 111.065(2), F.S., provides, as follows:
 The employing agency of any law enforcement officer shall have the option to pay the legal costs and reasonable attorney's fees for any law enforcement officer in any civil or criminal action commenced against such law enforcement officer in any court when the action arose out of the performance of his official duties and:
(a) The plaintiff requests dismissal of his suit; or
 (b) Such law enforcement officer is found not liable or not guilty. (e.s.)
Section 111.065(1), F.S., defines `law enforcement officer' and provides in pertinent part, as follows:
 For the purpose of this act, `law enforcement officer' means any person employed full time by . . . the state . . . whose primary responsibility is the prevention and detection of crime . . . . (e.s.)
By its terms, s 111.065, F.S., in relevant part, applies only to a law enforcement officer employed full-time by the state, and does not extend to a law enforcement officer employed by an employer other than the state. In addition, under this statute an employing agency has the option and is authorized to pay the prescribed legal costs and attorney's fees only when the action arises out of the performance of the law enforcement's officer's official duties, i.e., official duties performed for the state or employer-state agency and then only if the party bringing the civil or criminal action against the law enforcement officer requests dismissal of the action or if upon a trial of the case, the law enforcement officer is found to be not liable or not guilty. The statute confers no authority upon a state employing agency to pay such costs and fees when any civil or criminal action arises out of unofficial, off-duty activities or services performed for an employer other than the state or the employing state agency. If the Legislature had intended to extend these benefits to a law enforcement officer employed by and performing duties for another employer, it could have easily done so. Therefore, until legislatively or judicially determined otherwise, I am of the opinion that s 111.065, F.S., does not extend to or authorize the payment of legal costs and reasonable attorney's fees for a marine patrol officer of the Department of Natural Resources in any civil or criminal action commenced against such officer when such action arises out of the performance by such officer of services and unofficial duties for an employer other than the Department of Natural Resources.
Question One (D)
Section 111.07, F.S., authorizes the defense, under certain circumstances, at public expense of civil actions against public officers, employees, or agents. Section 111.07, F.S., provides, in pertinent part, as follows:
Any agency of the state, or any county, municipality, or political subdivision of the state, is authorized to provide an attorney to defend any civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action of any of its officers, employees, or agents for an act or omission arising out of and in the scope of his employment or function, . . . . (e.s.)
This statutory authorization applies only to the officers and employees of the Department of Natural Resources for civil actions arising out of damages or injury suffered as a result of acts or omissions arising out of and in the scope of their employment with the department. The benefits provided by the statute are not by its terms extended to other employments. I therefore must conclude that a marine patrol officer of the Department of Natural Resources while employed in approved off-duty part-time jobs with other employers is not entitled to a publicly provided defense by or at the expense of the department under the terms of s 111.07, F.S.
Moreover, where s 111.07, F.S., does apply, a court has held that the activation of the above statutory provision allowing public officers representation at public expense in civil actions is for the primary determination of the respective governmental unit whose officer, employee, or agent is being sued for acts or omissions arising out of and in the scope of their employment or function. Nuzum v. Valdes, 407 So.2d 277 (3 D.C.A. Fla., 1981). Thus, in any given situation where s 111.07 is applicable, the determination whether to activate the provisions of s 111.07
allowing representation at public expense is a function of the Department of Natural Resources and not this office's function or prerogative to decide.
Question One (E)
Your next question regarding the eligibility of marine patrol officers working during off-duty hours in part-time employment with other employers to `any other benefits available to law enforcement officers' cannot be answered by this office in the absence of a specific question of law and statutory citation to the particular state provided benefit at issue.
Question One (F)
Part II of Ch. 284, F.S., creates the Florida Casualty Insurance Risk Management Trust Fund to provide insurance, as authorized by s 284.33, F.S., for, among other things, workers' compensation, general liability and fleet automotive liability. The insurance programs developed under the above are, however, subject to the provisions and limitations of our waiver of sovereign immunity statute, s 768.28, F.S. See s 284.38, F.S. Section 768.28(1), F.S., provides in pertinent part as follows:
 In accordance with s. 13, Art. X, State Constitution, the state, for itself . . . hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state . . . to recover damages in tort for money damages against the state . . . for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of an employee
of the agency or subdivision while acting within the scope of his office or employment . . . . (e.s.)
In accordance with the above statutory provision, the liability coverage provided by the Florida Casualty Insurance Risk Management Trust Fund is limited to events occurring while the `employee' is acting within the scope of his office or employment with the state. As a general principle, off-duty part-time employment with other employers cannot be considered state business or within the scope of a public employee's employment with the state. It would thus seem to follow that any liability coverage provided by the Florida Casualty Insurance Risk Management Trust Fund would not be available to the officers at issue here when they are not working within the scope of their employment with the Department of Natural Resources.
Based upon the above limitation, it also follows that any automobile liability insurance carried by the state would not provide liability insurance coverage to a marine patrol officer of the Department of Natural Resources for any injury or loss of property, personal injury, or death caused by a negligent or wrongful act or omission of said officer while acting outside the scope of his employment with the Florida Department of Natural Resources. This is true even if the officer was driving a state-owned vehicle and had possession of the state-owned vehicle twenty-four hours a day. In Rabideau v. State, 409 So.2d 1045
(Fla. 1982), the Supreme Court held that our waiver of sovereign immunity statute, s 768.28, F.S., does not make the dangerous instrumentality doctrine applicable to the State of Florida and, therefore, the twenty-four hour assignment of a state-owned vehicle to a state employee does not enlarge state liability under s 768.28 to include acts committed outside the employee's scope of employment. In other words, mere state ownership of a motor vehicle will not automatically invoke state liability. Based on information contained in the materials furnished this office in connection with your request for my opinion, I understand that the Division of Risk Management of the Department of Insurance, which is charged with the administration, management, and maintenance of the Florida Casualty Insurance Risk Management Trust Fund, is of the same opinion regarding the liability coverage provided by the state.
In summary, it is my opinion that marine patrol officers in the Florida Department of Natural Resources, while employed in approved off-duty part-time jobs with other employers are not then performing official duties of the Department of Natural Resources and are not within the scope of their employment with said department and thus, (1) would not be entitled to workers' compensation and disability benefits provided by the State of Florida in accordance with Ch. 440, F.S., for any injury sustained while engaged in such outside employment with another employer; (2) would not be entitled to the payment at public expense of legal costs and attorney's fees under s 111.065, F.S., in any civil or criminal action against said officer when such action arises out of the performance by such officer of services and unofficial duties for another employer; (3) would not be entitled to a publicly provided defense by or at the expense of the Department of Natural Resources under the terms of s 111.07, F.S., to defend any civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action arising out of and in the scope of employment with another employer; and (4) would not be covered by the state's liability insurance coverage, general and automobile, when so acting outside the scope of their official duties for and employment with the Department of Natural Resources. Pending legislative clarification or judicial determination, the question whether a marine patrol officer killed while engaged in approved off-duty part-time work for other employers would be entitled to the death benefits provided for law enforcement officers under s 112.19, F.S., involves mixed questions of law and fact which must be decided on a case-by-case basis by the courts in appropriate legal proceedings and upon proper judicial findings of fact.
Sincerely,
Jim Smith, Attorney General
Prepared by: Linda Lettera, Assistant Attorney General