978 So.2d 836 (2008)
James KRAMER, Appellant,
v.
PALM BEACH COUNTY and Palm Beach County/Division of Risk Management, Appellees.
No. 1D07-1551.
District Court of Appeal of Florida, First District.
March 31, 2008.
*837 Barbara B. Wagner of Wagenheim & Wagner, P.A., Fort Lauderdale; Rodrigo *838 L. Saavedra, Jr., of Rodrigo L. Saavedra, Jr., P.A., Fort Lauderdale, for Appellant.
Lyle C. Platt of Clarke & Platt, P.A., West Palm Beach, for Appellees.
THOMAS, J.
Claimant appeals a final order from the Judge of Compensation Claims (JCC) denying compensability of his injury. Because we agree that the JCC applied the incorrect standard during her analysis of whether Claimant's injury qualified as a "special hazard," we reverse.
Claimant, a bridge tender for Palm Beach County, suffered leg injuries after tripping on a pile of debris left in a county right-of-way as a result of Hurricane Wilma. At his compensability hearing, the JCC heard testimony that Claimant was not parked in the designated bridge tender's parking area, but rather parked his vehicle in the parking lot of a nearby shopping center. The injury occurred just prior to 6:00 a.m., as Claimant walked from the shopping center to the bridge house to begin his shift.
The testimony of the various witnesses established that the majority of the bridge employees, including supervisors, parked in the same shopping center parking lot, even after a specific "cut-out" space was provided for the bridge tenders. There was conflicting testimony regarding whether Claimant was ever instructed that he must park in the new spot, and no evidence was presented that he faced reprimand if he failed to do so. In fact, Claimant testified that he did park in the new spot until his vehicle was damaged in an accident while parked there.
The JCC found that Claimant's injury fell within the "going or coming" rule set forth in section 440.092(2), Florida Statutes (2004), and denied compensability. Claimant argues that his injury either fell within the "premises" exception to the rule or was the result of a "special hazard," which is another exception to the general rule.
We agree with the JCC that Claimant's injury did not occur on Employer's premises, and affirm on that ground; however, we agree with Claimant that his injury fits within the special hazard exception.
If an accident is deemed to have occurred off-premises, an employee's injury is compensable if it is caused by a special hazard on a normal and customary route used by the employee as a means of entry to and exit from the employee's place of work. See Doctor's Bus. Serv., Inc. v. Clark, 498 So.2d 659, 663 (Fla. 1st DCA 1986) (en banc). There are two prongs to the special hazard exception: (1) the presence of a special hazard at a particular off-site location, and (2) close association of the access route to the work premises. Toyota of Pensacola v. Maines, 558 So.2d 1072, 1075 (Fla. 1st DCA 1990). There is no question that the first prong is met here, as a pile of debris is inherently dangerous. See, e.g., Maas Bros. v. Peo, 498 So.2d 657 (Fla. 1st DCA 1986); Petroske v. Worth Ave. Burger Place, 416 So.2d 856, 857 (Fla. 1st DCA 1982); Doctor's Bus. Serv., 498 So.2d at 661-666; Naranja Rock Co. v. Dawal Farms, 74 So.2d 282, 284-285 (Fla.1954).
As to the second prong, as stated in Toyota,
it is a well-established exception to the rule that the course of employment should extend to any injury that occurs at a point where the employee is within the range of dangers associated with the employment, such as a special hazard on a normal route used by the employee on his or her way to and from work.
Toyota, 558 So.2d at 1075.
Furthermore, the only essential inquiry is whether the danger is one to which the employee is peculiarly subjected, or to an abnormal degree, by reason of and *839 in conjunction with his employment. Id. at 1076 (citing Doctor's Bus. Serv., 498 So.2d at 665). Importantly, "the off-premises route used by the employee need not be the exclusive means of access, and . . . the special hazard exception will be applied if the route can be considered the usual or expected means of travel." Id. at 1075 (emphasis in original). Here, in denying the special hazard exception, the JCC found
that the route taken by the Claimant on December 13, 2005, did not serve primarily as the means of entry and exit to the Claimant's place of employment. The evidence further establishes that if the Claimant had parked his vehicle in the correct and designated parking space the route to the bridge house would have been a safer route without the obstacle on which the Claimant tripped.
This is not the proper analysis under the precedents described above.
Our decision in Toyota holds that the special hazard exception applies if the route can be considered the usual or expected means of travel. See Toyota, 558 So.2d at 1075. While the portion of the JCC's order quoted above clearly demonstrates that Claimant did not use the "expected" means of travel (i.e., parking in the designated spot), the JCC's order is silent as to whether Claimant's path was "usual." In fact, most of the evidence presented indicated that the bridge tenders traditionally parked in the shopping center's parking lot and walked down the same path taken by Claimant to get to the bridge house. Toyota clearly implies that alternative routes are acceptable as long as they are "usual or expected." Id. Thus, we find it unlikely that Claimant's route on the day of the injury could be considered a deviation from the norm.
We note that there is language in Toyota suggesting that a claimant would not be covered if he or she was involved in an activity "expressly prohibited by the employer" when the injury occurs. Id. at 1076. Although some of the JCC's findings here suggest that Claimant was instructed to park in the cut-out spot, there was no competent, substantial evidence that Claimant was ever expressly informed that he was forbidden to park in the shopping center lot or that he would be reprimanded if he continued to do so. In fact, the evidence demonstrated that most, if not all, of the bridge employees, including supervisors, continued to park in the shopping center lot even after the "cut out" spot was built.
Accordingly, we reverse with instructions to the JCC to apply the proper standard. Specific findings are necessary regarding whether Claimant's means of travel to and from work was "usual," and the JCC should more closely examine whether Claimant was ever "expressly prohibited" from parking in the shopping center parking lot by his employer. We point out that the JCC's finding that signs in the shopping center prohibited Claimant from parking there are not supported by competent, substantial evidence. The evidence in the record demonstrates that the signs actually read, "No Prime Catch Parking," which is a reference to the nearby restaurant named "Prime Catch." Therefore, these signs only prevent patrons of the restaurant from parking in the designated area and have no bearing on Claimant. Accordingly, the signs are not relevant to a determination of whether a special hazard existed.
AFFIRMED in part, REVERSED in part, and REMANDED.
PADOVANO and LEWIS, JJ., concur.